UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK        X

|  |  |  |
|---|---|---|
| THE REPUBLIC OF RWANDA. | : | |
| Plaintiff, | : | 07 CIV 7663 (JSR) |
| | : | |
| - against - | : | |
| | : | |
| | : | |
| JOSEPH J. FERONE, ESQ.; FERONE & FERONE, | : | |
| and 333 SOUTH HEALY AVENUE CORP., | | |
| | : | |
| Defendants. | : | |

       X

## DECLARATION IN FURTHER SUPPORT OF THE ORDER TO SHOW CAUSE AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION

Robert F. Van Lierop, an attorney duly licensed to practice law before the courts of the State of New York, declares and states:

1.     I represent the Republic of Rwanda (hereinafter referred to as "Rwanda"), plaintiff in the above-captioned case.

2.     I am fully familiar with the facts set forth in this Declaration, which I submit in further support of the Order to Show Cause and in opposition to defendants' cross-motion.

3.     In the fall of 2003, Rwanda decided to purchase property to be the new official residence of its Ambassador/Permanent Representative to the United Nations.  I represented Rwanda in that transaction.

4.     After viewing various properties with real estate brokers, Rwanda decided to purchase the property known as, and located at, 333 South Healy Avenue,

Scarsdale, NY 10583. Attached hereto as Exhibit "A" is a copy of the

Memorandum of Agreement dated November 12, 2003 setting forth the terms and

conditions of the proposed purchase.

5.      The Certificate of Occupancy issued by the Town of Greenburgh,

Department of Buildings, described the subject property as a single-family

detached residence located on parcel number 30-32-1681-60 - & 60A. (A copy of

the Certificate of Occupancy is attached to this Declaration as Exhibit "B").

6.      On November 19, 2003, Joseph J. Ferone, Esq. transmitted a draft of a

proposed Contract of Sale in which it was set forth in paragraph 39 that his client,

the Seller, was, "…in the process of obtaining a subdivision of the property

located at 333 South Healy Avenue as per attached subdivision plan. At the time

of closing herein, Purchaser shall execute a deed and all necessary transfer

documents to convey Lot 60A to Seller herein. Said deed and transfer documents

shall be held in escrow by the Seller's attorney and will be duly recorded upon

full approval of said subdivision." (A copy of this draft is attached to this

Declaration as Exhibit "C").

7.      In negotiating the Contract of Sale, the parties ultimately agreed, at

Rwanda's insistence, that the process of obtaining approval of the subdivision

would not be open ended for an indefinite period of time as initially proposed by

Seller in Exhibit "C", but would instead contain a specified period in which

approval of the subdivision had to be obtained. It was expressly agreed that

failure to obtain the necessary approval of the subdivision within that period

would result in the entire parcel of land belonging to Rwanda without the

2

proposed subdivision. This was an important component of the transaction and an inducement offered to Rwanda to enter into the contract.

8.     Defendants requested a two (2) year period to obtain the subdivision approval, but subsequently requested and were granted the three (3) year period that was part of the final agreement. Rwanda consented to the three (3) year period to accommodate the Seller who, as a local real estate developer purported to have knowledge of the absolute maximum time-frame required to obtain approval of the subdivision. (A copy of the Contract of Sale, Rider paragraph 38 is attached to the Order to Show Cause as Exhibit "A").

9.     At the closing of title, Rwanda executed a deed, and transfer documents for the lot that was the subject of the proposed subdivision. This deed and the transfer documents were delivered to the Seller's attorney to be held in escrow under the terms and conditions set forth in paragraph 38 of the Rider to the Contract of Sale.

10.     In the course of the next three (3) years after the closing of title, Rwanda observed that the Seller left equipment, and much litter and debris on the site that the Seller hoped to obtain the subdivision approval for. Despite repeated requests from Rwanda, this site was left littered with debris and in a state of serious disrepair.

11.     On February 19, 2007 I received a letter from Alfred A. Delicata, Esq., after he had telephoned me seeking to extend the time within which the Seller was allowed to proceed with the subdivision process (A copy of that letter is attached to this Declaration as Exhibit "D").

3

12.     I responded to Mr. Delicata's letter requesting the return of the deed, and

any transfer documents, as well as a cleanup of the property in accordance with

the terms and conditions of the Contract of Sale. (A copy of that letter is attached

to this Declaration as Exhibit "E"). Mr. Delicata telephoned a few days later and

indicated that he was aware that the time to obtain approval of the subdivision had

passed. He explained that it was the fault of persons hired by the Seller to process

the application. He asked whether Rwanda would consider granting an extension.

13.     I informed Mr. Delicata that I would communicate his request, but that I

doubted that any extension would be granted.

14.     On June 21, 2007, I wrote to Mr. Delicata again confirming earlier

telephone discussions reiterating Rwanda's position that no extension of time

would be granted to the Seller to obtain approval of the subdivision. (A copy of

that letter is attached to this Declaration as Exhibit "F").

15.     On July 10, 2007 I received a letter from Mr. Delicata. In this letter, Mr.

Delicata assumed a recalcitrant posture on behalf of the Seller. (A copy of his

letter is attached to this Declaration as Exhibit "G").

16.     I responded to Mr. Delicata's letter that same day refuting what I

perceived to be the bogus assertions set forth therein. (A copy of my letter dated

July 10, 2007 is attached to this Declaration as Exhibit "H").

17.     On July 11, 2007, I wrote to Thomas Madden, Deputy Commissioner,

Community Development and Conservation, Town of Greenburgh. (A copy of

my letter addressed to Mr. Madden is attached to this Declaration as Exhibit "I").

18.     On July 17, 2007, I wrote to Janet Insardi, Esq., Deputy Town Attorney, Town of Greenburgh again setting forth Rwanda's position.  (A copy of my letter addressed to Janet Insardi, Esq., is attached to this Declaration as Exhibit "J").

19.     On July 24, 2007, I received a copy of a letter addressed to Mr. Delicata from Ms. Insardi.  (A copy of that letter dated July 24, 2007 is attached to this Declaration as Exhibit "K").

20.     Subsequently on August 17, 2007, and August 21, 2007, I exchanged correspondence with defendant Joseph J. Ferone prior to filing and serving this action (Copies of those letters are attached to this Declaration as Exhibit "L").

Dated: September 19, 2007

By: _____
Robert F. Van Lierop
Cowan, DeBaets, Abraham
Sheppard LLP
41 Madison Avenue, 34th Floor
New York, NY 10010
Tel. (212) 974-7474

5

# EXHIBIT A

**Century 21**
**Mancuso Realty**
495 New Rochelle Road
Bronxville, New York 10708
Business (914) 699-1980
Fax (914) 664-7822

## MEMORANDUM OF AGREEMENT

**Date**: 11/12/03
**Price**: $1,360,000.00

**Closing**: 1 mo after signing contracts on 333 S.Healy Ave, Scarsdale, NY 10583 by the Buyer(s) and Seller(s). On or about 12/23/03

**Premises**: 333 S. Healey Avenue, Scarsdale, NY 10583 (new construction)

**Terms and Conditions**: All cash, good faith agreement on the preview of the contracts at 45 Wrexham Road, Bronxville, NY 10708

**Contingencies**: A letter of non objection from the United States Dept. of State and an Engineers Inspection, no later that 10 business days from the Nov.6[th] inspection by the Dept of State.

**Inclusions**: Alarm, Intercom/CD, central vac, 2 whirlpool tubs, cooktop, double oven, microwave, sub zero refrigerator, dishwasher, washer/dryer.

**Seller's Information**
333 S. Healey Ave. Corp
333 S. Healey Ave.
Scarsdale, NY 10583

**Buyer's Information**
Sovereign Republic of Rwanda
124 East 39th Street
New York, New York 10016

**Seller's Attorney**
Joseph J. Ferone, Esq
484 White Plains Rd.
Eastchester, NY 10709
(914) 961-3636
Fax: (914) 961-4440

**Buyer's Attorney**
Robert F. Van Lierop, Esq.
Van Lierop, Burns & Bassett, LLP
320 Convent Ave.
New York, NY 10031
(212) 491-8000
Fax: (212) 491-4949

**Listing Agent**
Lorenzo Signorile
Tri-Crest Realty
484 White Plains Rd.
Eastchester, NY 10709
(914) 779-1700
Fax: (914) 961-4440

**Selling Agent**
Nadine Mourad
Century 21 Mancuso Realty
495 New Rochelle Rd.
Bronxville, NY 10708
(914) 699-1980
Fax: (914) 664-7822

Please note: Commission must be paid by Certified or Bank checks. Also furnish our office with a copy of the contract of sale. Thank you for your cooperation.

**NOTICE TO BUYER** Buyer understands & acknowledges that if the seller verbally accepts buyer's offer that such acceptance is not binding on the seller until a written contract has been fully executed between buyer & seller. Seller has the legal right to accept any other offer or to make counter offers to other prospective buyers until a contract has been fully executed. Realtor, as agent of the seller, is obligated to communicate all offers to the seller until the closing of the property.

# EXHIBIT B



# TOWN of GREENBURGH
## DEPARTMENT OF BUILDINGS
320 Tarrytown Road, P. O. Box 205, Elmsford, New York 10523

## CERTIFICATE OF OCCUPANCY

### PERMANENT

Issue Date . . . . . .  2/19/04

Parcel Number . . . . .  30 -32 -1681-60 -&   60A
Property Address  . . .  333 S HEALY AVE
                          SCARSDALE              NY 10583
Subdivision Name  . . .  UNKNOWN
Legal Description . . . .
Property Zoning . . . .  R-10 ONE FAM RES DIST

Owner . . . . . . . . .  MAFFEI,JOSEPHINE & ROGLIANO,

Contractor  . . . . . .  HARRISON PARK ASSOC
                          914 949 3322

Application number  . .  02-00008199 000 000
Description of Work . .  SINGLE FAMILY RES DETACHED
Construction type . . .  TYPE 5B WOOD FRAME
Occupancy type  . . . .  ONE-FAMILY DWELLING
Flood Zone . . . . . .
Special conditions  . .
      NEW ONE FAMILY RESIDENCE

Approved  . . . . . . .  _____
                              Building Official

### VOID UNLESS SIGNED BY BUILDING OFFICIAL

# EXHIBIT C

**FERONE & FERONE**
**ATTORNEYS AT LAW**
**484 WHITE PLAINS ROAD**
**EASTCHESTER, NEW YORK 10709**

---

**(914) 961-3636**
**TELECOPIER(914)961-4440**
**FAX TRANSMITTAL**

DATE/TIME: _11/19/03_

TO: _Robert F. Van Lierop, Esq._

FAX: _(212) 946-8474 491-4949_

TO: _____

FAX: _____

FROM: _Bridget_

RE: _333. S. HEALEY AVENUE CORP_
_to SOVEREIGN REPUBLIC OF RWANDA_
_→ Hard copy being Fedexed_

NUMBER OF PAGES: _11_
(Including Transmittal)

**VIA FAX 914-961-4440**

**PLEASE CONTACT 914-961-3636 IMMEDIATELY**
**SHOULD TRANSMITTAL BE INCOMPLETE OR ILLEGIBLE**

The information contained in t his facsimile communication is attorney privileged and confidential information intended only for use of the individual or entities named above. If the reader of this message is not one of the intended recipients, or is not the employee or agent responsible to deliver it to one of the intended recipients, you are hereby notified that any dissemination, distribution or copying of this communication in error, please immediately notify us by telephone, and return the original communication to us at the above address via the U.S. Postal Service. Thank you.

**FERONE & FERONE**
ATTORNEYS AT LAW
484 WHITE PLAINS ROAD
EASTCHESTER, N.Y. 10709

JOSEPH J. FERONE (1904-1964)
JOSEPH J. FERONE JR.

TEL: (914) 961-3636
FAX: (914) 961-4440

November ~~12~~ 19, 2003

Van Lierop, Burns & Bassett, LLP
320 Convent Avenue
New York, New York  10031

Attn:  Robert F. Van Lierop, Esq.

Re:  333 S. HEALEY AVENUE CORP.  to SOVEREIGN REPUBLIC OF RWANDA
     333 S. Healey Avenue, Scarsdale, New York  10583

Dear Mr. Van Lierop:

Enclosed please find one original and two copies of Contract of Sale in the above matter. If you find everything satisfactory, please have your clients execute same and return all three copies to me at your earliest convenience.

Delivery of these shall in no way constitute an agreement to sell until fully executed by all parties.

Thanking you, I remain

Very truly yours,

FERONE & FERONE

Joseph J. Ferone

JJF:bs
encls.

Residential Contract of Sale 11-2000

Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association

Case 7:07-cv-07663-JSR   Document 4-2   Filed 09/19/2007   Page 13 of 52

WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").

## CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION**

This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

# Residential Contract of Sale

*Contract of Sale* made as of November 2003

**BETWEEN**

333 S. HEALEY AVENUE CORP.
333 S. Healey Avenue, Scarsdale, NY 10583
Social Security Number/Fed. I.D. No.(s):

hereinafter called "Seller" and

**Sovereign Republic of Rwanda**
124 East 39th Street, New York, NY 10016
Social Security Number/Fed. I.D. No.(s):

hereinafter called "Purchaser"

## The parties hereby agree as follows:

**1. Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: **333 S. Healey Ave., Scarsdale, NY 10583**
Tax Map Designation: Section 30, Block 1681, Lot 60
on the tax map of the Town of Greenburgh

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2. Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in-microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (strike out inapplicable items).

Excluded from this sale are furniture and household furnishings and

**3. Purchase Price.** The purchase price is **$ 1,360,000.00** payable as follows:

(a) On the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):
$

(b) By allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:
$

(c) By a purchase money note and mortgage from Purchaser to Seller:
$

(d) Balance at Closing in accordance with paragraph 7:
$ 1,360,000.00

**4. Existing Mortgage.** (Delete if inapplicable) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:

(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of     percent per annum, in monthly installments of $     which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on

(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the

payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.

(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.

(d) Seller shall deliver to Purchaser at Closing a certificate dated not more that 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more then 30 days before Closing, containing the same information.

(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

**5. Purchase Money Mortgage.** *(Delete if inapplicable)* If there is to be a purchase money mortgage as indicated in paragraph 3(g) above:

(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $            for its preparation.

(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than           percent per annum and the total debt service thereunder shall not be greater than $            per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess is to be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefore, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

**6. Downpayment in Escrow.**

(a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at: The Chase Manhattan Bank

Address 360 White Plains Road, Eastchester, NY   10709

until Closing or sooner termination of this contract shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advise of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

**7. Acceptable Funds.** All money payable under this contract unless otherwise specified, shall be paid by:

(a) Cash, but not over $1,000.00

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York endorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser.

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of **$ 1,000.00** , and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

## 8. Mortgage Commitment Contingency. *(Delete paragraph if inapplicable. ~~For explanation, see:~~ NOTES ON MORTGAGE* COMMITMENT CONTINGENCY CLAUSE.)

(a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of **$** for a term of at least years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, or no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) *(Delete this subparagraph if inapplicable)* Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a ~~Commitment from such Institutional Lender(s).~~

~~(d) If all Institutional Lenders to whom applications were made deny~~ such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state, foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, ~~postage prepaid.~~

## 9. Permitted Exceptions. The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

**10. Governmental Violations and Orders.**

(a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b) *(Delete if inapplicable)* ~~All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing~~

**11. Seller's Representations.**

(a) Seller represents and warrants to Purchaser that:

   I. The Premises abut or have a right of access to a public road;

   II. Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

   III. Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act. Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

   IV. The Premises are not affected by any exemptions or abatements of taxes; and

   V. Seller has been known by no other name for the past ten years, except:

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12. Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical conditions, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(c), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13. Insurable Title.** Seller shall give and Purchaser shall accept such title as any reputable title insurance company licensed in New York shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for this contract.

**14. Closing, Deed and Title.**

(a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a Bargain and Sale with covenant's deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15. Closing Date and Place.** Closing shall take place at the office of Ferone & Ferone, 484 White Plains Road, Eastchester, NY 10709 at 10:00 A.M. o'clock on one (1) month after Contract is fully executed or upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of **Purchaser's Lending Institution**

**16. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a **one** family dwelling at the date of Closing.

(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment, and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17. Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.**

(a)  To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:
(i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.

(b)  If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c)  If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d)  If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e)  Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing.  This subparagraph shall survive Closing.

**19. Allowance for Unpaid Taxes, etc.**  Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less that five business dates after Closing, provided the official bills therefor computed to said date are produced at Closing.

**20. Use of Purchase Price to Remove Encumbrances.**  If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**21. Title Examination; Seller's Inability to Convey; Limitations of Liability.**

(a)  Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser.  Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)  (i) If at the date of Closing, Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period.  If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c)  If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22. Affidavit as to Judgments, Bankruptcies, etc.**  If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.**

(a)  If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be

impossible to ascertain and the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25. Notices.** Any notice or other communication ("Notice") shall be in writing and either:

(a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any Notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to paragraph 7(b) or paragraph 20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries. This contract may be delivered as provided above or by ordinary mail.

**26. No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27. Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than Tri-Crest Realty and Century 21 Mancuso Realty ("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorney's fees arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur the termination of this contract.

**28. Miscellaneous.**

(a) All prior understanding, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this or any provisions hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by any other person or entity.

(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

Continued on Rider attached hereto. *(Delete if inapplicable)*

*In Witness Whereof,* this contract has been duly executed by the parties hereto.

333 S. HEALEY AVENUE CORP.                           SOVEREIGN REPUBLIC OF RWANDA

By:                                                  *By:*

                              *Seller*

_____
                              *Seller*                                              *Purchaser*

Attorney for Seller: JOSEPH J. FERONE, ESQ.          Attorney for Purchaser:ROBERT F. VAN LIEROP, ESQ. 320
Ferone & Ferone                                      Van Lierop, Burns & Bassett, LLP
Address: 484 White Plains Road, Eastchester, NY 10709    Address: 320 Convent Avenue, New York. NY 10031
Tel.:914-961-3636          Fax:914-961-4440           Tel.: 212-491-8000      Fax: 212-946-9474

Receipt of the Downpayment is acknowledged and the undersigned
agrees to act in accordance with the provisions of paragraph 6 above.

                                                         JOSEPH J. FERONE, ESQ.
                                                                   *Escrowee*

## Contract of Sale                                         PREMISES

TITLE NO.                                               Sheet
                                                        Section
                                                        Block
                    TO                                  Lot
                                                        Plate
                                                        County or Town
                                                        Street Number

---

## NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE
### for
### RESIDENTIAL CONTRACT OF SALE

1   **WARNING:** The mortgage Commitment contingency clause for the Residential Contract of Sale is a bar association form that attempts to provide a mechanism that makes the rights and obligations of the parties clear in sale of residence in ordinary circumstances. It should be reviewed carefully by Seller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated modifications should be made whenever necessary.

2.   Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage Commitment letter from an Institutional Lender within the number of days specified for the amount specified.  This refers in calendar days. Seller's attorney should state his/her calculation of the Commitment Date in the letter delivering the executed contract to Purchaser's attorney, to prevent confusion later.  Purchaser should promptly confirm or correct that date.  In applying for a loan, Purchaser should inform its lender of the scheduled date of Closing in the contract and request that the expiration date of the Commitment occur after the scheduled dated of Closing.  Purchaser must comply with deadlines and pursue the application in good faith.  The Commitment contingency is satisfied by issuance of a Commitment in the amount specified on or before the Commitment Date, unless the Commitment is conditioned on approval of an appraisal.  If the Commitment is conditioned on approval of an appraisal and such approval does not occur prior to the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date.  If the Commitment is later withdrawn or not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.

5.   If, as has been common, the Commitment letter itself is conditioned on sale of Purchaser's home or payment of any outstanding debt or no material adverse change in Purchaser's financial condition, such a Commitment will satisfy the contract contingency nonetheless, and Purchaser will take the risk of fulfilling those Commitment conditions, including forfeiture of the Downpayment if Purchaser defaults on its obligation to close. Under New York case law, a defaulting Purchaser may not recover any part of the Downpayment, and Seller does not have to prove any damages.  If Purchaser is not willing to take that risk, the clause must be modified accordingly.

6.   Purchaser may submit an application to registered Mortgage Broker instead of applying directly to an Institutional Lender.

7.   This clause allows Seller to cancel if a Commitment is not accepted by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of the Commitment, to allow Seller the option to avoid having to wait until the scheduled date of Closing to see if Purchaser will be able to close.  Seller may prefer to cancel rather than to wait and settle for forfeiture of the Downpayment if Purchaser defaults.  Because of Seller's right to cancel, Purchaser may not waive this contingency clause.  This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain the Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.

8.   Purchaser may want to add in paragraph 21(c) that Purchaser's reimbursement should include non-refundable financing and inspection expenses of Purchaser, which should be refunded by Seller if Seller willfully defaults under the contract of sale (alternative if Seller is unable to transfer title under the contract of sale).

Case ... Document 4-2 ... Filed 09/11/2007 ... Page 20 of 52

3. If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points, fees or a condition requiring sale of the current home, those terms and conditions should be specified in the ...

4. This clause requires that initial review and approval of Purchaser's credit will occur before the Commitment letter is issued. Purchaser should confirm with the lender that this is the case before applying for the Commitment.

9-25-00
Joint Committee on ... At-Sight ... Contingency Clause
Real Property Section of the New York State Bar Association
Real Property Law Committee of the Association of the Bar of the City of New York
Real Property Committee of the New York County Lawyers Association

RIDER TO CONTRACT OF SALE DATED NOVEMBER    , 2003
BETWEEN 333 SOUTH HEALEY AVENUE CORP., SELLER,
AND
SOVEREIGN REPUBLIC OF RWANDA, PURCHASERS

29.  If this Rider conflicts in any way with the printed form Contract of Sale, or any other Riders or additions thereto, this Rider shall control.

30.  Seller shall have no liability after the Closing for any obligation statement or representation of Seller set forth in the contract unless it is accompanied by a statement, signed by the seller, that it shall survive the Closing.

31.  The acceptance by the Purchaser of the deed of conveyance shall be deemed and construed as a conclusive acknowledgment by the Purchaser of the deed and full performance by the Seller of all of the terms, covenants and provisions of the within Agreement, both expressed and implied, on the part of the Seller to be kept and performed, excepting those, which by law survive the delivery of the deed herein.

32.  9. Permitted Exceptions (printed form), continued.
    (f)  Subject to any state of facts, an accurate survey would disclose, provided same does not render title uninsurable.
    (g)  Subject to covenants, easements, restrictions and other matters of record, if any, provided same are not violated and do not prohibit the use of premises as a one family dwelling.
    (h)  Variations &/or encroachments between record lines and hedges, party walls,, fences and the like shall not be considered exceptions to title, provided the title company will insure against forced removal thereof.
    (i)  Variations between record lines and tax maps.

33.  Purchaser acknowledges and agrees that this Contract and the Purchaser's obligation and ability to close on the purchase of the herein described Premises is contingent upon the sale of real property located at 45 Wrexham Road, Bronxville, New York  10708 provided that said sale takes place on or before January 31, 2004.  In the event that said sale does not take place on or before said date then and in that event, Seller shall have the option of canceling this contract and neither party shall have any liability against each other.

34.  If any part or provision of this Contract shall be finally determined to be void, illegal or legally unenforceable by any Court of competent jurisdiction, such determination shall not effect the validity of any other part or provision of this Contract, all of which shall remain in full force and  effect as between the parties hereto.

35. The Contractor shall deliver to the Purchaser any and all guaranties and warranties received from any supplier, subcontractor of or manufacturer with respect to any item of material, labor fixture or equipment included in the improvements (other than those supplied by the Owner), and shall assign its interest in the same to the Owner if the circumstances require.

36. Purchaser acknowledges and agrees that it is the Purchaser's obligation to pay the New York State Transfer Tax.

37. Contractor shall provide warranties as set forth in General Business Law Article 36-B Sections 777 through 777-a.

38. This transaction is contingent upon the issuance of a letter of non-objection by the United States Department of State, in accordance with the provisions of the U.S. Foreign Sovereign Immunities Act of 1976, as amended in 1997. A copy of the letter of non-objection is appended hereto.

39. Seller is in the process of obtaining a subdivision of the property located at 333 S. Healey Avenue as per attached subdivision plan. At the time of closing herein, Purchaser shall execute a deed and all necessary transfer documents to convey Lot 60A to Seller herein. Said deed and transfer documents shall be held in escrow by the Seller's attorney and will be duly recorded upon full approval of said subdivision.

40. After the full execution of this contract, Seller agrees to allow Purchaser to store furniture and articles of personal property in the garage and basement areas of the premises herein. A pre-possession agreement will be executed by the parties prior to this paragraph taking affect.


333 S. HEALEY AVENUE CORP.          SOVEREIGN REPUBLIC OF RWANDA


BY: _____ , Seller      BY: _____ , Purchaser

# EXHIBIT D

# ALFRED A. DELICATA

### ATTORNEY AT LAW
### 484 WHITE PLAINS ROAD
### EASTCHESTER, NEW YORK 10709

ADMITTED IN NEW YORK
NEW JERSEY & CONNECTICUT

TEL: (914) 337-8080
FAX: (914) 337-3936

February 16, 2007

**VIA OVERNIGHT COURIER**

Mr. Robert Van Lierop, Esq.,
Cowan, DeBaets, Abrahams & Sheppard
41 Madison Avenue, 34th Floor
New York, New York 10010

    *Re:    333 South Healey Avenue*

Dear Mr. VanLierop:

It was good to speak to you the other day in connection with the above referenced matter. Please convey my client's well wishes and congratulations to the former Ambassador in connection with his promotion.

As we discussed, please find a TP-584 and RP5217 for the transfer of the property back to my clients pursuant to the contract of sale. I will use the deed that was executed at the time of closing. If for some reason that deed is deemed unacceptable, I would request that your client execute a replacement at that time. I apologize for the late notice but this matter was off my radar as I was not involved in the subdivision process and only recently did I get involved again.

Thank you for your expected cooperation. I remain,

Very truly yours,

ALFRED A. DELICATA

AAD/rk

Enclosure:
TP-584
RP-5217

# EXHIBIT E

# COWAN, DeBAETS, ABRAHAMS & SHEPPARD LLP

### ATTORNEYS AT LAW

FREDERICK P. BIMBLER
TOBY M. J. BUTTERFIELD
AL J. DANIEL, JR.*
TIMOTHY J. DeBAETS
ROBERT I. FREEDMAN
ELLIS B. LEVINE
MITCHELL E. RADIN
ROBERT L. SEIGEL
J. STEPHEN SHEPPARD
RALPH J. SUTTON*
KENNETH N. SWEZEY
DAVID BRUCE WOLF
NANCY E. WOLFF

ZEHRA J. ABDI
LISA K. DIGERNES
MATTHEW A. KAPLAN°
M. KILBURG REEDY
MASON A. WEISZ

PHILIP M. COWAN (1943-2001)
HOWARD ABRAHAMS (1943-1990)

OF COUNSEL:
ANNE C. BAKER
JUDITH A. BRESLER
JERROLD B. GOLD
ALBERT GOTTESMAN
ROGER E. KASS
MICHAEL D. REMER
ROBERT F. VAN LIEROP

CORRESPONDENT FIRM:
DONALDSON & HART
9220 SUNSET BLVD. STE. 224
LOS ANGELES, CA 90069
(310) 273-8304

*ALSO ADMITTED IN CA & DC
°ALSO ADMITTED IN NJ
†ALSO ADMITTED IN AR & DC

February 20, 2007

**VIA FACSIMILE AND FIRST CLASS MAIL**

Mr. Alfred A. Delicata, Esq.
Alfred A. Delicata
Attorney at Law
484 White Plains Road
Eastchester, NY 10709

Re: 333 South Healy Avenue
Scarsdale, NY 10583

Dear Mr. Delicata:

With reference to your letter dated February 16, 2007 (which was received in my office today), and our telephone conversation of Wednesday evening, February 14, 2007, I am not able to comply with your request at this time. The Contract of Sale required the subdivision to be approved within three years from the date of the closing of title, which was February 19, 2004. The deed and transfer documents were to be held in escrow by you, and returned to my client if the subdivision was not approved within the three-year period set forth in the Contract of Sale. In fact, my client has for sometime been concerned by what it perceived to be a lack of activity on this matter by your client.

I was asked to monitor this situation, on behalf of my client. Prior to your telephone call, I had prepared a letter to send in the event the subdivision was not approved, as now appears to be the case, within the required period. I informed my client when we spoke last week, but that did not alter the requirement that the subdivision be approved within three years of the previously mentioned closing date.

The fact is, the time for approval of the subdivision has expired. Unless you can demonstrate that the subdivision has been approved, the Government of Rwanda requests the return of the deed, and any transfer documents you might have in your possession.

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

Mr. Alfred A. Delicata
2/20/07
Pg. 2

The Government also requests the immediate removal of any and all equipment, or other personal property owned by your client from the premises, and the restoration of the property to its natural condition free of all litter and debris.

As I explained in our telephone conversation, the Ambassador is currently away on official business. The *Chargé d' affaires*, Mr. Shalita, has **not** been instructed to extend the time within which the subdivision can be approved. Therefore, we have no authority to execute any documents which might be interpreted as extending your client's time to gain approval of the subdivision.

Please feel free to contact me with any questions you may have concerning my client's position.

Sincerely yours,

Robert F. Van Lierop

RFVL/jsp

cc: H.E. Mr. Stanislas Kamanzi
    H.E. Mr. Joseph Nsengimana
    Mr. Nicholas Shalita
    Mr. Pascal Nyamulinda

# EXHIBIT F

*Law Offices Of*
*Robert F. Van Lierop*

41 Madison Avenue
34th Floor
New York, New York 10010

(T) 212-974-7474
(F) 212-974-8474

June 21, 2007

Mr. Alfred A. Delicata, Esq.
Alfred A. Delicata
Attorneys at Law
484 White Plains Road
Eastchester, NY 10709

Re:  333 South Healy Avenue
       Scarsdale, NY 10583

Dear Mr. Delicata,

As we recently discussed, Ambassador Nsengimana has received instructions from Rwanda's capital, confirming that the Government will not consider extending the time for your clients to get approval of the subdivision of the lot purchased by Rwanda on February 19, 2004. Accordingly, I have been instructed by the Ambassador that my letter of February 20, 2007 still represents the position of his government. He also has informed me that he is unable to meet with your clients on this matter, or to consider any further delays in having the deed, and transfer documents you have been holding in escrow, returned to me at my office. In addition, I was instructed to reiterate our request for, "…removal of any and all equipment, or other personal property owned by your client from the premises, and the restoration of the property to its natural condition free of all liter and debris."

Sincerely yours,

Robert F. Van Lierop

RVL/jsp

cc: H.E. Mr. Joseph Nsengimana

# EXHIBIT G

# ALFRED A. DELICATA

### ATTORNEY AT LAW

#### 484 WHITE PLAINS ROAD
##### EASTCHESTER, NEW YORK 10709

ADMITTED IN NEW YORK
NEW JERSEY & CONNECTICUT

TEL: (914) 337-8080
FAX: (914) 337-3936

July 9, 2007

**VIA OVERNIGHT COURIER**

Law Offices of Robert F. Van Lierop
41 Madison Avenue, 34th Floor
New York, New York 10010

Attention:  Robert Van Lierop, Esq.

> Re:    **333 South Healy Avenue**
>        **Scarsdale, New York 10583**

Dear Mr. Van Lierop:

I am in receipt of your letter of June 21, 2007.  Please be advised that my client has directed me to inform you that since they have received work session approval at the last meeting of the Greenberg Zoning Department they will be going forward with their application for subdivision approval.

The contract of sale contemplated the sale and purchase of a single family home erected on Lot 60.  Although the contract of sale denoted that Lot 60A was also being transferred, it was clearly not the intent of either party to include this parcel for the contract price.  This is manifested by the rider where the parties agreed to transfer Lot 60A back to the Seller.  Therefore, your client's position of keeping Lot 60A would grant them a benefit that was not contemplated or negotiated by and between the parties.  The contract is void of the customary "meeting of the minds" with regard to the transfer of lot 60A at the contract price.  No reasonable person would sell both parcels, as well as a newly constructed home of approximately Five Thousand (5,000) square feet for the contract price when each building lot alone would command Four Hundred Thousand ($400,000.00) Dollars at the time of contract execution.

Additonally, your client's interpretation of the Rider made part of the underlying contract of sale is incorrect.  While Rider ¶ 38 sets forth a three year window for my client to obtain subdivision approval, I do not believe that once the three years expires that triggers an automatic transfer of the property to your client.  The more telling and controlling part of the clause is the last sentence of the clause, "**In the event the subdivision is not approved**, the deed and transfer documents for the subdivision parcel shall be returned to Purchaser with no further action taken or required. (emphasis added)

**ALFRED A. DELICATA**
ATTORNEY AT LAW

Van Lierop
July 9, 2007
Page 2 of 3

At bar, the subdivision has yet to be decided and is subject to a public hearing at which point an approval is expected. Therefore, your client cannot conclude that the subdivision is not approved and accordingly rush to judgment that they are entitled to possession of the lot.

We suggest that the three year term was merely a milestone for compliance with no real finality or threat of loss of property. It was never contemplated that your client would take possession of the Lot 60A while my clients had a subdivision application pending before the relevant municipal boards. The transfer trigger would only become a reality if an approval was rejected and my clients determined that an approval for a building lot would not be issued for Lot 60A. If a building lot approval could not be obtained then the parcel would obviously become devalued and possibly included under the contract price.

Another point that must be taken into consideration is the amount of time, money and effort that my clients have expended to date in connection with Lots 60 and 60A. Prior to the erection of your client's home, my clients expended approximately Two Hundred Fifty Thousand ($250,000.00) for site work in connection with the two lots. This amount was necessary for excavation of tremendous amounts of rock and debris, grading, bringing sewer service and other utilities and other site work needs. Your client was aware that my client's intent was to erect another home on 60A. Therefore, it is inequitable that your clients should attempt to make a claim of colorable ownership of lot 60A based on their knowledge of all of the relevant facts surrounding its real intended use.

Additionally, my clients closed this transaction as a courtesy to your client in advance of obtaining the necessary approvals. The Republic of Rwanda had transferred their Bronxville property and was desirous of relocating to 333 South Healy Avenue as expeditiously as possible. This consideration was extended to your client in connection with its representation of noninterference with my clients as they sought subdivision approval.

It should be noted, we are only at this point because of unexpected delays and difficulties with the Building Department and Zoning Board of Greenberg. While this is not your client's fault, any delays should not be used offensively by your client to deprive the Seller of realizing a gain that they have much invested in.

ALFRED A. DELICATA
ATTORNEY AT LAW

Van Lierop
July 9, 2007
Page 3 of 3

Based on the foregoing, we would expect going forward your client would honor both the letter and spirit of the contract and not cause any harm to my client's pending application for subdivision approval.

I remain,

Very truly yours,

ALFRED A. DELICATA

AAD/rk

cc: Mr. Gian Maffei

# EXHIBIT H

*Law Offices Of*
*Robert F. Van Lierop*

41 Madison Avenue
34th Floor
New York, New York 10010

(T) 212-974-7474
(F) 212-974-8474

July 10, 2007

**VIA FACSIMILE AND OVERNIGHT COURIER**

Mr. Alfred A. Delicata, Esq.
Alfred A. Delicata
Attorney at Law
484 White Plains Road
Eastchester, NY 10709

Re: 333 South Healy Avenue
Scarsdale, NY 10583

Dear Mr. Delicata:

My client, the Government of the Republic of Rwanda, shares my surprise at, and dismay with, the substance and the tone of your letter of July 9, 2007.

As you know, we notified you in writing on February 20, 2007 that pursuant to the Contract of Sale, by which my client purchased the above-referenced property, you, as escrow agent, were asked to return certain transfer documents. At your request my client was asked to reconsider its position, although I informed you that it was not likely that the Government of Rwanda would agree to disregard the terms of the contract, and grant your clients additional time to obtain approval of the proposed subdivision. I informed you of this on numerous occasions. Most recently, I wrote to you again on the 21st of June 2007, informing you that Rwanda would not extend your time to obtain approval of the subdivision, and requesting that you discharge your duties as the escrow agent.

Subsequently, one of your clients made direct contact with Rwanda's Minister of Infrastructure, asking him to intervene on behalf of your clients. The Minister informed your client that this would not be possible. Your letter's reference to what the Contract of Sale allegedly "contemplated" is certainly inaccurate, and of no consequence, as is your view of what a reasonable person would sell. The contract speaks for itself. Your bogus references to the intention of the parties and the "meeting of the minds" are irrelevant in light of what was agreed to in the written contract.

Mr. Alfred A. Delicata
7/10/07
Pg. 2

The fact remains that the subdivision was not approved within the required 3-year window. You admitted this to me yourself, and agreed with my client's interpretation of its rights under the Contract of Sale.

The other arguments set forth in your letter are similarly flawed, and beside the point. For you to assert that the transaction was closed as a "courtesy" to my client, ignores the fact that your clients were handsomely compensated for the sale of the property in an arms length transaction. You yourself admitted to me that your only legitimate course of action would be to proceed against those who your clients retained to obtain the subdivision approval but who failed to do so in the required time frame.

Needless to say, my clients and I feel that all that your letter has accomplished is to destroy whatever good-will may have existed for you and your clients. Any efforts by your clients to proceed with obtaining approval of a subdivision of Rwanda's property now would be improper, fraudulent, and an exercise of bad faith. I trust we need not remind you that you are required to return to us the documents you were holding in escrow.

Sincerely yours,

Robert F. Van Lierop

RFVL/jsp

cc: H.E. Mr. Joseph Nsengimana
    Vittorio Ciraco Jr.,
    Thomas Madden

Encl.

# EXHIBIT I

*Law Offices Of*

*Robert F. Van Lierop*

41 Madison Avenue                                    (T) 212-974-7474
34th Floor                                           (F) 212-974-8474
New York, New York 10010

July 11, 2007

VIA FACSIMILE AND FIRST CLASS MAIL

Hon. Thomas Madden
Deputy Commissioner
Community Development and Conservation
Town of Greenburgh
177 Hillside Avenue
Greenburgh, NY 10607

Re: 333 South Healy Avenue
    Scarsdale, NY 10583

Dear Deputy Commissioner Madden,

Further to my letter of July 10, 2007 addressed to Alfred A. Delicata, Esq., my client, the Government of the Republic of Rwanda, strongly opposes the application for a subdivision of the above-referenced property. The applicants have no legal right to seek the subdivision. Pursuant to the terms of the Contract of Sale by which Rwanda purchased the property, a 3-year window was permitted for the applicants to seek approval for the subdivision. When that window closed, the applicants were notified that an extension would not be granted. Much to our surprise, they have apparently persisted in pursing the approval of the application in violation of the contract, and in bad faith.

My client is sufficiently upset that it has not ruled out filing a complaint concerning the actions of the escrow agent in this matter.

I am scheduled to travel out of the country on July 20, 2007. I would, however, welcome an opportunity to appear in person when this matter is on your calendar. Accordingly, I request an adjournment if necessary so that I might appear.

Thank you for your attention to this unfortunate turn of events.

Sincerely yours,

Robert F. Van Lierop

RVL/jsp

cc: H.E. Mr. Joseph Nsengimana

# EXHIBIT J

*Law Offices Of*
*Robert F. Van Lierop*

41 Madison Avenue
34th Floor
New York, New York 10010

(T) 212-974-7474
(F) 212-974-8474

July 17, 2007

VIA FACSIMILE AND FIRST CLASS MAIL

Janet Insardi, Esq.
Deputy Town Attorney
Town of Greenburgh
177 Hillside Avenue
Greenburgh, NY 10607

Re: 333 South Healy Avenue
    Scarsdale, NY 10583

Dear Ms. Insardi,

Further to our discussion of this afternoon, I have attached a photocopy of the deed for the above-referenced property, which is the official diplomatic residence of H.E. Mr. Joseph Nsengimana, Permanent Representative of the Republic of Rwanda to the United Nations. Pursuant to the Contract of Sale, Rwanda allowed a 3-year window for the developers of the property to obtain approval for a proposed subdivision. The developers failed to obtain the necessary approval within that 3-year period. Therefore, pursuant to the terms of the contract their attorney was notified in writing on February 20, 2007 that they were required to return the provisional deed, and all provisional transfer documents to my attention. They were also notified verbally on numerous occasions, and again in writing on June 21, 20007. Subsequent correspondence has reiterated Rwanda's position on this matter. It was only a few days ago that we discovered that the developers are attempting to continue the application for the subdivision, which we feel is not only an inappropriate application at this point, but also a course of action not being pursued in good faith.

On February 20, 2007, we also asked the developers to clean the property, restore it to its original condition, and to remove all debris and equipment. Subsequently, Rwanda received notification of a violation because this had not been done. I contacted the attorney for the developers about this again. Eventually, Rwanda wound up hiring someone to complete the clean up an incomplete job was done by the developers.

The Government of the Republic of Rwanda, as owner of the property, strongly opposes the application for a subdivision. It is Rwanda's present intention to landscape

Janet Insardi, Esq.
July 17, 2007
Pg. 2

the property and incorporate it into the existing landscape design of the Ambassador's official residence.

      Thank you for your attention to this matter.

                              Sincerely yours,

                              Robert F. Van Lierop

RVL/jsp

Encl.

# EXHIBIT K



**Timothy W. Lewis**
Town Attorney

# TOWN of GREENBURGH
## Office of the Town Attorney
**177 Hillside Avenue**
Greenburgh, New York 10607
Telephone (914) 993-1546
Telefax (914) 993-1656

David R. Fried
First Deputy Town Attorney
Edward M. Lieberman
Peter Carparelli
Janet M. Insardi
Richard L. Marasse
Margaret C. Taglia
Deputy Town Attorneys
Ellen Franzese/Paralegal

July 24, 2007

Mr. Alfred Delicata, Esq.
484 White Plains Road
Eastchester, New York 10709

> Re: Planning Board Case No.: 03-04
> 333 S. Healy Avenue
> (Section 380, Block 1681, Lots 60 & 60A)

VIA FACSIMILE    914-337-3936

Dear Mr. Delicata:

I believe you are in receipt of the letter dated July 17, 2007 which I received from Mr. Van Lierop, the attorney for the Republic of Rwanda. I have attached it for convenience. I have reviewed the deed and the affidavit of ownership (attached). It does not appear that your client can proceed with the above captioned application without the consent of Rwanda.

Please advise as to when or if a revised affidavit of ownership will be filed with the Town.

Thank you for your corporation.

Very truly yours,

JANET M. INSARDI
Deputy Town Attorney

JMI/da
Attachments
Cc: Planning Board
    Planning Department
    Robert F. Van Lieroz



*441610140DEDA*

| Control Number | WIID Number | Instrument Type |
|----------------|-------------|-----------------|
| 441610140 | 2004161-000061 | DED |



**WESTCHESTER COUNTY RECORDING AND ENDORSEMENT PAGE**
**(THIS PAGE FORMS PART OF THE INSTRUMENT)**
**\*\*\* DO NOT REMOVE \*\*\***

**THE FOLLOWING INSTRUMENT WAS ENDORSED FOR THE RECORD AS FOLLOWS:**

**TYPE OF INSTRUMENT** DED - DEED
**FEE PAGES** 4               **TOTAL PAGES** 4

| RECORDING FEES | |
|----------------|---|
| STATUTORY CHARGE | $6.00 |
| RECORDING CHARGE | $12.00 |
| RECORD MGT. FUND | $19.00 |
| RP 5217 | $50.00 |
| TP-584 | $5.00 |
| CROSS REFERENCE | $0.00 |
| MISCELLANEOUS | $0.00 |
| | |
| TOTAL FEES PAID | $92.00 |

| MORTGAGE TAXES | |
|----------------|---|
| MORTGAGE DATE | |
| MORTGAGE AMOUNT | $0.00 |
| EXEMPT | |
| | |
| COUNTY TAX | $0.00 |
| YONKERS | $0.00 |
| BASIC | $0.00 |
| ADDITIONAL | $0.00 |
| SUBTOTAL | $0.00 |
| MTA | $0.00 |
| SPECIAL | $0.00 |
| | |
| TOTAL PAID | $0.00 |

| TRANSFER TAXES | |
|----------------|---|
| CONSIDERATION | $0.00 |
| | |
| TAX PAID | $0.00 |
| TRANSFER TAX # | 15158 |

| RECORDING DATE | 07/29/2004 |
|----------------|------------|
| TIME | 11:45:00 |

SERIAL NUMBER
DWELLING
              THE PROPERTY IS SITUATED IN
WESTCHESTER COUNTY, NEW YORK IN THE:

TOWN OF GREENBURGH

| WITNESS MY HAND AND OFFICIAL SEAL |
|-----------------------------------|
| *Leonard N. Spano* |
| LEONARD N. SPANO |
| WESTCHESTER COUNTY CLERK |

| Record & Return to: |
|---------------------|
| BRIDGE SERVICE CORP |
| 277 BROADWAY |
| SUITE 510 |
| NEW YORK, NY 10007-2001 |

Deed
Gre.
3p

— Bargain and Sale Deed, with Covenant against Grantor's Acts — Individual or Corporation (Single Sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

**THIS INDENTURE,** made the *19th* day of *February* in the year *2004*

**BETWEEN**

    **333 S. HEALEY AVENUE CORP., HAVING A MAILING ADDRESS AT
333 S. HEALEY AVENUE, SCARSDALE, NEW YORK  10583**

party of the first part, and

    THE REPUBLIC OF RWANDA *c/o the permanent Mission of Rwanda to the United Nations 1st East 39th St. New York, N.Y. 10016*

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of

                                                                    dollars

paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

        **SEE ATTACHED SCHEDULE A**

Please Return To:
BRIDGE SERVICE CORP.
800-225-2736
277 Broadway #510
New York, NY 10007-2001

The above described premises
is or will be improved by a
one or two family dwelling only.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

                                        333 S. HEALEY AVENUE CORP.

                                        By: *Graziella Ruggierano*
                                        *President*

## ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of Westchester          , ss:

On the 19th day of February in the year 2004, before me, the undersigned, personally appeared GRAZIELLA ROGLIANO , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instruments and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

JOSEPH J. FERONE, JR.
NOTARY PUBLIC, State of New York
No. 60-6275075
Qualified in Westchester County
Commission Expires Feb. 26, 2007

### ACKNOWLEDGEMENT OF SUBSCRIBING WITNESS TAKEN IN NEW YORK STATE

State of New York, County of          , ss:
On the          day of          in the year          .
before me, the undersigned, a Notary Public in and for said State, personally appeared
, the
subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in

(If the place of residence is in a city, include the street and street number if any, thereof):
that he/she/they know(s)

to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto

## ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of          , ss:

On the          day of          in the year          .
before me, the undersigned, personally appeared
, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

### ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YORK STATE

*State of          , County of          , ss:
*(Or Insert District of Columbia, Territory, Possession or Foreign County)

On the          day of          in the year          .
, before me the undersigned personally appeared

Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the

(add the city or political subdivision and the state or country or other place the acknowledgement was taken).

## Bargain and Sale Deed with covenant against Grantors Acts

Title No. FNT - 3706 - 9787 - W

333 S. HEALEY AVENUE CORP.

TO
THE REPUBLIC OF RWANDA

FIDELITY NATIONAL TITLE
INSURANCE CO. OF N.Y.
TWO PARK AVENUE 3rd FLOOR
NEW YORK, N.Y. 10016
1-212-481-5858

04 · 3706 · 9787 - W

SECTION   380
BLOCK   1681
LOT   60 & 60A
COUNTY   WESTCHESTER          333-1565

Please Record & Return to:
Bridge Service Corp.
800-225-2736
277 Broadway, #510
New York, NY   10007-2001

RETURN BY MAIL TO:

VAN LIEROP, BURNS & BASSETT, LLP
ATTN: ROBERTA VAN LIEROP, ESQ.
320 CONVENT AVENUE
NEW YORK, NEW YORK 10031

## SCHEDULE A *(Description)*

ALL that certain plot, piece or parcel of land, situate, lying and being in the Town of Greenburgh, County of Westchester, and State of New York, being a portion of an unnumbered lot on a certain map entitled, "Revised Map of Hartsdale Park, Town of Greenburgh, Westchester County, N.Y.," and filed in the Westchester County Clerk's Office, Division of Land Records on September 27, 1932, as Map No. 3912, more particularly bounded and described as follows:

BEGINNING at a point on the southwesterly side of Healy Avenue said point of beginning being described as follows: starting from a point formed by the intersection of the northwesterly side of Central Park Avenue with the southwesterly side of Healy Avenue;

RUNNING THENCE northwesterly and along the southwesterly side of Healy Avenue North 68 degrees 23 minutes 50 seconds West 28.68 feet and North 53 degrees 31 minutes 30 seconds West 230.84 feet to said point of beginning from which said point of beginning is described as follows:

THENCE starting from a point of beginning as described above running northwesterly and along land of F. Mancuso North 53 degrees 31 minutes 30 seconds West 236.38 feet to a corner;

THENCE northeasterly North 31 degrees 58 minutes 50 seconds East 78.10 feet and North 17 degrees 16 minutes 00 seconds East 49.50 feet to a corner;

THENCE easterly and along other land of Mario Barbagallo North 75 degrees 22 minutes 32 seconds East 146.62 feet to the westerly side of Healy Avenue;

THENCE in a southerly direction and along the westerly side of Healy Avenue the following courses and distances on a curve to the right with a radius of 72.24 feet a distance of 47.85 feet to a point of tangency and along said tangent South 13 degrees 42 minutes 30 seconds West 170.90 feet to a point of curve and along said curve to the left with a radius of 75.15 feet a distance of 88.18 feet to a point or place of BEGINNING.

## AFFIDAVIT OF OWNERSHIP

State of New York    )ss.
County of Westchester)

___JOSEPHINE MAFFEI___ being duly sworn, deposes and says that (s)he resides at

___53 PARK LANE___ in the Town of __W. HARRISON__ in the County

of __WESTCHESTER__ in the State of ___N Y___ that (s)he is the

owner in fee of all that piece or parcel of land situated and lying in the Town of Greenburgh

aforesaid and known and designated Section __30__, Volume _____, Sheet __32__, Block __1681__,

Lot(s) __LO - LOA__ and that (s)he hereby authorizes ___JOHN MAFFEI___ to make

application in his/her (its) behalf and that the statement of facts contained in said application is true.

*********************************************************************************

_____
Signature of Owner

Sworn to me before this ___9th___
Day of __September 2003__

_____
Notary Public
SUZANNE GAYLE DERASO
Notary Public State of New York
No. 4973049
Qualified in Westchester County
Commission Expires 10/9/__ OXo

RECEIVED
JAN 5
TOWN OF GREENBURGH
PLANNING BOARD

# EXHIBIT L

*Law Offices Of*

# Robert F. Van Lierop

41 Madison Avenue
34th Floor
New York, New York 10010

(T) 212-974-7474
(F) 212-974-8474

August 17, 2007

**VIA FACSIMILE AND FIRST CLASS MAIL**

Joseph Ferone, Esq.
Ferone & Ferone
484 White Plains Road
Eastchester, New York, 10709

Re: 333 South Healy Avenue
Scarsdale, NY 10583

Dear Mr. Ferone:

With reference to the above property, my client, the Republic of Rwanda renews its request that the deed, and transfer documents referred to in paragraph 38 of the Rider to the Contract of Sale dated November 26, 2003 be returned to me at my office within the next ten (10) days.

It has now been 6 months since we first made this request pursuant to the terms of the Contract of Sale. As you know, the proposed subdivision was not approved. Under the terms of paragraph 38 of the Rider, the deed, and transfer documents were to have been returned to my client with no further action required on our part. Furthermore, your clients should not have taken the action they took in continuing to pursue the subdivision after the expiration of the 3-year period granted to obtain approval of the subdivision. My client's view is that the Contract speaks for itself, and that language of the Rider is very clear on this matter.

We thank you in advance for your prompt attention to this matter, the resolution of which is overdue.

Sincerely yours,

Robert F. Van Lierop

RFVL/jsp

cc: H.E. Mr. Stanislas Kamanzi
    Alfred A. Delicata, Esq.

**FERONE & FERONE**
ATTORNEYS AT LAW
484 WHITE PLAINS ROAD
EASTCHESTER, N.Y. 10709

JOSEPH J. FERONE (1904-1964)
JOSEPH J. FERONE JR.

TEL: (914) 961-3636
FAX: (914) 961-4440

August 21, 2007

**VIA FACSIMILE & FIRST CLASS MAIL**

Law Offices of Robert F. Van Lierop
41 Madison Avenue, 34th Floor
New York, New York 10010

Attention: Robert Van Lierop, Esq.

> **Re:    333 South Healy Avenue**
> **Scarsdale, New York 10583**

Dear Mr. Van Lierop:

I am in receipt of your letter of August 17, 2007. Please be advised that my client has further directed me not to return the deed and transfer documents to your attention and that I will continue to hold same as escrowee until this matter is resolved.

My client does not agree with your position that the contract speaks for itself and asserts that there is ambiguity with regard to the three year expiration date. To that end, we would suggest that your client cooperate with our application before the Town of Greenberg Zoning Board by withdrawing your previously submitted letter of July 17, 2007. Your client's continued recalcitrance will leave no alternative but to commence legal proceedings for breach of contract, as your client is contractually bound not to oppose any application brought by my client.

Please advise at your earliest convenience if you will withdraw your letter of July 17, 2007 to the Town of Greenberg. I remain,

Very truly yours,

JOSEPH J. FERONE

JJF/rk
cc: Mr. John Maffei

## PROOF OF SERVICE

I am employed in the County of New York, State of New York.  I am over the age of 18 and not a party to the within action; my business address is 41 Madison Avenue, 34th Floor, New York, New York 10014.

On **September 19, 2007,** I caused to be served **PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE ORDER TO SHOW CAUSE, AND IN OPPOSITION TO THE CROSS-MOTION and DECLARATION IN FURTHER SUPPORT OF THE ORDER TO SHOW CAUSE AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION** by e-mail and Federal Express, addressed as follows:

> **Alfred A. Delicata, Esq.**
> **484 White Plains Road**
> **Eastchester, NY 10709**
> italdel@aol.com

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at New York, New York on this 19th day of September, 2007.

Deborah Mays