UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE REPUBLIC OF RWANDA,                                          07 Civ. 7663 (JSR)

                Plainitff,

   -against-

JOSEPH J. FERONE, ESQ.; FERONE &
FERONE and 333 S. HEALEY AVENUE CORP.,

                Defendants.
------------------------------------------------------------X

**DEFENDANTS MEMORANDUM OF LAW IN OPPOSTION TO THE PLAINTIFF'S ORDER TO SHOW CAUSE AND IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR RECISSION**

Defendants Joseph J. Ferone, Esq., Ferone and Ferone and 333 S. Healy Avenue Corp.,(hereinafter referred to as "333 Corp") by their attorney Alfred A. Delicata, Esq., respectfully submit this memorandum of law in opposition to the Order to Show cause currently *sub judice* seeking to compel defendants to turn over a prior executed deed and in support of defendants' cross motion for a judgment on the grounds of rescission.

### STATEMENT OF FACTS

333 Corp. was formed on or about November 13, 2003, for the purposes of real estate development and construction.

On or about June 19, 2002, the predecessor in interest to 333 Corp. purchased the vacant land located at 333 S. Healy Avenue for Three Hundred Thousand ($300,000.00) Dollars. The parcel was identified as one that could be re-subdivided into two conforming lots of 14,601 sq. feet (Lot 60) and 16,426 (Lot 60A). The Assessor's map showed two parcels, however, the Subdivision Map of Hartsdale Park, dated 1932 failed

to depict two lots being created at the time the subdivision was established. Therefore, Planning Board approval was required to divide the lot.

Upon purchase, the property was in need of immediate and substantial site work because of extreme rock outcroppings and topographical slope. 333 Corp. expended in excess of Two Hundred Forty Three Thousand ($243,000.00) Dollars in connection with the site work necessary for the construction of the two homes.

With respect to the construction of the home on lot 60, 333 Corp. expended in excess of Five Hundred Sixty Five Thousand ($565,000.00) Dollars.

Thereafter, 333 Corp. was presented with an offer from the Republic of Rwanda (hereinafter referred to as "Rwanda") for the purchase of the home on Lot 60. 333 Corp. accepted the offer and on or about November 23, 2003 entered into a contract for the sale of the property. Prior to the execution of the contract of sale, a separate rider was negotiated and prepared. Rider ¶ 38 called for 333 Corp. to obtain subdivision approval from the Planning Board within a three year period. Originally the parties had agreed to a two year window to obtain the approval. However, in an effort to provide security and prevent future discourse on this issue, the parties subsequently agreed that a three year period would provide sufficient time to secure the necessary approval. Both parties were mistaken regarding the time that it would take to obtain the subdivision approval.

Thereafter, the property was sold for the contract price of One Million Three Hundred Sixty Thousand ($1,360,000.00) Dollars. In connection with the sale, 333 Corp. paid a real estate commission in the amount of Sixty Eight Thousand ($68,000.00) Dollars and a title bill and related legal bills in the amount of Twenty Five Thousand ($25,000.00) Dollars.

The subdivision process proved more arduous and lengthy then expected. In connection with 333 Corp's application, a Revised Narrative for Visual Analysis of Existing Conditions for the areas surrounding the proposed house needed to be submitted. This narrative was a detailed description of the property from 14 different vantage points and was essential to the application based on the fact that the proposed construction would disturb areas containing a degree of slope noted to be equal to or greater than Twenty Five (25) percent. Because of the Slope, a separate Steep Slope Application needed to be presented to the Town Planning Board for consideration under the Steep Slope Law.

Based upon the foregoing, 333 Corp. was unable to deliver a complete application to the Town Planning Staff until August 2005. Thereafter, the complete application has to be reviewed by all representatives of the Town of Greenburgh which includes Planning, Engineering, the Building Inspector, Police Department and Fire Chief. Once the package has passed those multiple layers of review, the matter was ready for review by the Planning Board at a work session.

333 Corp.'s initial work session was March 1, 2006. At that meeting, additional changes to the application had to be made in connection with the position of the house on the property. Based on the location of the house, there were additional steep slope concerns. Moreover, there was an issue with site distance which relates to the safety of vehicles entering onto the roadway from the property. Based on these substantial changes, the application package had to be resubmitted which required a recalculation of the steep slope application as well as previously submitted SEQRA (State Environmental

Quality Review Act) documents. This revision process took the balance of 2006 to complete.

Even after the changes were accepted, there were still some additional comments raised by the Fire Chief in connection with the application. In January of 2007 site distance and driveway placement issues still remained outstanding.

On January 31, 2007, Thomas Madden, Deputy Commissioner for the Town of Greenburgh, Department of Community Development and Conservation, sent a letter to 333 Corp's engineer in response to his demand for the status of our pending application. See Maffei at Exhibit A. In his letter he noted that:

> "It is important to note that changes to the Code of the Town of Greenburgh have **greatly increased both the review and approval process time period** (emphasis not in original). This is due to the fact that the applicant must supply a substantial amount of additional information for review and consideration by both the Town's departments and Planning Board that had not been previously required."

Furthermore, the letter noted that the subdivision application was acceptable for review by the Planning Board.

The next step after this letter was for 333 Corp. to be scheduled for work session before the Planning Board. This work session was scheduled for and took place on June 20, 2007, a **full five months** after being informed that the application was acceptable. Thereafter 333 Corp. received written confirmation to appear at a public hearing to occur on August 1, 2007.

333 Corp. was unable to proceed at that public hearing based on a letter submitted to the Town of Greenburgh by the plaintiff. See Maffei at Exhibit B.

4

Pursuing the subdivision approval to date has cost 333 Corp. in excess of Twenty Five Thousand Dollars, ($25,000.00).

## POINT I

### MUTUAL MISTAKE EXISTS AND THE DEFENDANTS ARE THERBY ENTITLED TO PARTIAL RESCSSION OF THE CONTRACT

It is well settled that a contract is voidable under the equitable remedy of rescission if both parties entered into the contract under a mutual mistake of fact and the parties have not greatly altered their positions. (See *Matter of Gould v. Board of Educ. of Sewanhaka Cent. High School Dist.,* 81 NY2d 446, 453 (1993); *Rekis v. Lake Minnewaska Mtn. Houses,* 170 AD2d 124, 130 (3rd Dept. 1991), lv dismissed 79 NY2d 851 (1992). A mutual mistake of fact is "one common to both contracting parties wherein each labors under same misconception as to past or existing material fact. Mutual mistake with regard to contract exists where there has been a meeting of the minds of the parties and an agreement actually entered into but the agreement in its written form does not express what was really intended by the parties". See Black's Law Dictionary 5th Edition.

It is equally well settled that "[t]he mutual mistake must exist at the time the contract is entered into and must be substantial" ( *Melia v. Riina,* 204 AD2d 955, 957 (3rd Dept. 1994), lv dismissed 85 NY2d 857 (1995); *Ryan v. Boucher,* 144 AD2d 144, 145 (3rd Dept. 1988), since without a "meeting of the minds" the contract is voidable. See Melia v Riina, 204 AD2d at 957. The mistake must be substantial Ryan v. Boucher, *supra* and fundamental so as to defeat the object of the contract. Copeland v. Diamond, 164 Misc.2d 507 (N.Y. Sup. Ct. 1995) Whether a mutual mistake is fundamental to the

5

purpose of the contract is determined by an objective test. Ryan v. Boucher, *supra.* The determination of materiality of a mutual mistake of fact can turn on whether the party seeking rescission or other remedy had the opportunity to investigate the facts, and whether that party's mistake of fact is attributable to the party's own negligence in failing to seek further information. Bellin v. Pulsifer, 195 AD2d 665 (3rd Dept. 1993)Neither side should profit from a mistake jointly perceived and acted upon, where the mistake is both mutual and substantial. The fact that the contract has been executed and is not executory is immaterial, particularly when the parties have not greatly altered or changed their positions. D'Antoni v. Goff, 52 AD2d 973(3rd. Dept. 1976)

Applying the above principles to the facts at bar, it is clear that the defendants are entitled to partial rescission of the contract of sale, specifically Rider ¶ 38.

Defendant Josephine Maffei, President of 333 S. Healey Avenue Corp. (herinafter referred to as "Maffei") in her affidavit in support stated that the parties were unaware of the actual time that it would take to obtain the required subdivision approval. See Maffei Affidavit at ¶ 6. Through no fault of the parties and unbeknownst to them, the arduous and lengthy subdivision approval process became even more difficult and time consuming due to changes to the Code of the Town of Greenburgh.. The mistaken belief regarding the amount of time it would take to obtain the subdivision approval existed at the time of contract execution and it is obvious that based upon the current market value of Lot 60A(See Delicata Affirmation at Exhibit A) the mistake is not only substantial and material but also goes to the core of the contract. Therefore it is inescapable that the parties never intended to convey or accept Lot 60A for the consideration in the contract. Since there was no meeting of the minds the contract is voidable. In the case at bar, the

6

entire contract need not be voided but only that portion which deals with the mutual mistake, namely Rider ¶ 38.

Furthermore it is clear that if rescission of the offending paragraph is granted both parties would be in substantially the same situation that they bargained for. To wit, Rwanda would still be in possession of the home that it purchased and the Defendants would be allowed to pursue their application to its conclusion. As noted in the Maffei affidavit at ¶ 21, the application would have been the subject of two meetings, if necessary, and may have already been approved at this time. Therefore, Rwanda can not assert any viable claim to any change in position that they have made in reliance of obtaining Lot 60A. Additionally, Rwanda has not altered their position nor would they be prejudiced in any way if a partial rescission is granted in this matter. Rwanda, as a Purchaser, executed the contract of sale with the express knowledge and understanding that the Sellers were seeking to obtain subdivision approval to erect a one family house on the adjoining lot. They agreed in the contract not to oppose the Defendants at any subsequent board meeting or proceeding. See Rider ¶ 38. Therefore, there can be no claim of prejudice because Rwanda is in the same position that they bargained for.

Maffei sets forth the substantial aspect of the mistake at ¶¶ 15-16,18-19. It is clear that Rwanda, if allowed to retain Lot 60A, would be getting twice the amount of land originally bargained for and would be depriving Maffei of a business opportunity that her company has been actively pursuing at a tremendous cost and expense for over three years.

As previously stated, an objective standard will be applied to the determination if a mutual mistake is fundamental to the contract. Here, there are no facts that can be

alleged to defeat the defendants' assertion that the mistake goes to the essence of the contract. In a contract of sale for real property, a major consideration is the land that accompanies the house that is purchased. If a purchaser was allowed ownership of an extra building lot in connection with the purchase of his home, it is clear that would go to the fundamental purpose of the contract. Put another way, a purchaser of new construction buys the home and the land with the improvements made thereto. Therefore, if the Purchaser was to somehow receive another piece of land of greater dimension than the one originally purchased, there can be no argument that goes to the fundamental purpose of the contract.

Finally, it is clear that neither party to a contract should profit from a mistake that is both mutual and substantial. Neither party to the contact at bar was certain as to how long the subdivision approval would take or how difficult the process would actually be. The three year period was used but that was a substantial mistake suffered by both parties. Rwanda should not be allowed to claim that they were not a party to a mistake that is tied to the fundamental purpose of the contract, especially in light of the tremendous hardship 333 Corp. will be caused to suffer if the subdivision application is not allowed to be pursued.

Maffei in her affidavit set forth the ruinous financial ramifications of this transaction. Rwanda has suffered no damages in connection with this matter other than the cost of litigation. While perhaps that is not a *de minimis* expense, it is clear that the equities weigh heavily in 333 Corp's favor relating to the loss they will suffer if Rider Rider ¶ 38 is not rescinded.

**POINT II**

**A COURT ACTING IN EQUITY MAY RESCIND THE CONTRACT IF FAILING TO DO SO WOULD RESULT IN UNJUST ENRICHMENT**

It is well established that a person may be deemed to be unjustly enriched if he (or she) has received a benefit, the retention of which would be unjust (Restatement, Restitution, § 1, Comment *a* ). A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties. It is a conclusion reached through the application of principles of equity. See Sharp v Kosmalski, 40 NY2d 119, 123 (1976).

Applying equitable principles herein, it can readily be seen that the parties were contracting for the sale of a one family home erected on Lot 60.  It is further obvious that the Rwanda was never intended to receive Lot 60A in connection with the transfer of the property for the agreed upon price, based upon the fact that they executed a deed returning Lot 60A to the Defendants as part of the closing requirements.  Additionally, 333 Corp. expended substantial sums of money for both the site work necessary to construct a home on lot 60A and the legal fees and costs associated with the pursuit of subdivision approval.  Therefore, it is clear that equity dictates that Rwanda not be allowed to retain possession of Lot 60A.  To allow otherwise would be an unconscionable result providing Rwanda with a windfall that they are not entitled to under the terms of the contract.

Defendants also rely on the affidavit of John Gavares of New York Appraisal Associates for the current value of the property.  See Delicata Affirmation at Exhibit A.  Therefore, it is beyond cavil that to allow Rwanda to retain possession of Lot 60A would unjustly enrich them in the amount of  Eight Hundred Thirty Five Thousand

($835,000.00) Dollars and said result would be unconscionable given the relevant financial facts at bar.

### POINT III

**THE CONTRACT CONTAINS A LATENT A LATENT AMBIGUITY THEREBY PERMITTING THE INTRODUCTION OF PAROL EVIDENCE**

Even where an agreement seems clear on its face, a "latent ambiguity" may exist by reason of "the ambiguous or obscure state of extrinsic circumstances to which the words of the instrument refer" Teig v Suffolk Oral Surgery Associates 2 A.D.3d 836 (2nd Dept. 2003) citing Lerner v. Lerner 120 A.D.2d 243 (2nd Dept. 1986), app withdrawn 70 NY2d 641 (1987).

The terms of Rider ¶38 appear, at first blush, to be clear and unambiguous. However, the subdivision was not "not approved" as stated in the contract. To the contrary, the relevant Boards have not had an opportunity to decide the application as it was only recently scheduled for a public hearing. Therefore, the latent ambiguity arises based upon the term "not approved". Defendants respectfully assert that the words, although clear on their face, have another meaning. Since the application was pending at the expiration of the three year period, equity should prevail and Defendants should be allowed a disposition on the record before the relevant Greenburgh municipal boards. The defendants have exerted considerable resources in the pursuit of the subdivision application and to be denied at this point is unconscionable and leads only to the unjust enrichment of Rwanda. If Rwanda did not interfere with the continuation of the application, and 333 Corp. had been able to appear before the public hearing, they more than likely would have secured the long sought after approval. See Maffei Affd. at Exhibit B.

When a latent ambiguity arises, parol evidence is admissible for the purpose of ascertaining the true intention of the parties as expressed in the agreement. See Trinity BUI v Industrial Enterprises of America, Inc., 2007 WL 1974967 (Sup. Ct. N.Y. Cty. 2007). Defendants assert that it was never their intention to transfer the property to Rwanda absent a denial from the Town of Greenburgh which would render the property useless to the Defendants. If a Building permit could not be acquired for lot 60A, then the lot would have no value to the defendants and Rwanda would have been able to have unfettered access to the property. Maffei at ¶ 22. 333Corp's assertion must be afforded considerable weight when viewed under the strictest scrutiny. The defendants needed to be denied and not "not approved" for Rwanda to be able to lawfully lay claim to rightful ownership of the property. If the defendants had not vigorously pursued this application or had given it short shrift, then the Rwandan position would be plausible. However, the facts at bar clearly demonstrate that the defendants used their best efforts to comply with the stringent demands of the Town of Greenburgh in the pursuit of the subdivision and have acted in good faith in connection therewith.

While parol evidence of the parties' intent is not admissible to create an ambiguity, a contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists. See Trinity BUI v Industrial Enterprises of America, Inc., 2007 WL 1974967 (Sup Ct. N.Y. Cty. 2007). Here it is clear that Rwanda was aware of the subdivision application process. They agreed not to take any adverse steps in connection with the defendant's application. However, parol evidence should be admitted to demonstrate that the real intent of the parties was for defendants to obtain, at the minimum, a determination of their pending application. If the application was heard

within the three year time period and subsequently denied, the defendants would have caused the delivery of the Deed to Rwanda without any further intervention because that was the essence of the contract. See Maffei Affd. ¶ 22.

## CONCLUSION

Based on the foregoing, the Defendants respectfully request that Plaintiff's Order to Show Cause be denied in its entirety and that Defendants cross-motion for rescission be granted and that this Court order Plaintiff's cease and desist from causing any future delay to the subdivision application.

Dated:    Eastchester, New York
          September 14, 2007

                                              _____
                                              ALFRED A. DELICATA(AD-2875)
                                              Attorney for Defendants
                                              484 White Plains Road
                                              Eastchester, New York 10709
                                              914-337-8080