```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
THE REPUBLIC OF RWANDA,              :
                                     :
              Plaintiff,             :   07 Civ. 7663 (JSR)
                                     :
         -v-                         :   MEMORANDUM ORDER
                                     :
JOSEPH J. FERONE, ESQ., FERONE &     :
FERONE, and 333 S. HEALEY AVENUE     :
CORP.,                               :
                                     :
              Defendant.             :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

In November, 2003, plaintiff, the Republic of Rwanda, entered into a contract of sale with defendant, 333 S. Healey Avenue Corp. ("Healey"), to purchase property located at 333 S. Healey Avenue in Scarsdale, New York. See Affidavit of H.E. Mr. Joseph Nsengimana sworn to August 28, 2007 ("Nsengimana Aff.") ¶ 3. The property consisted of two lots, Lot 60 and Lot 60A. See Residential Contract of Sale Dated November 26, 2003 ("Contract") (Nsengimana Aff., Ex. A) ¶ 1. A rider to the Contract provides in pertinent part:

> Seller is in the process of obtaining a subdivision of the property located at 333 S. Healey Avenue as per attached subdivision plan. At the time of closing herein, Purchaser shall execute a deed and all necessary transfer documents to convey Lot 60A to Seller herein. Said deed and transfer documents shall be held in escrow by the Seller's attorney and will be duly recorded upon full approval of said subdivision. Seller shall have three (3) years from the closing of title to obtain subdivision approval . . . In the event the subdivision is not approved, the deed and transfer documents for the subdivision parcel shall be returned to Purchaser with no further action taken or required.

Rider to Contract of Sale Dated November 26, 2003 ("Rider") (Nsengimana Aff., Ex. A) ¶ 38.

The closing took place on February 19, 2004. At that time,

plaintiff executed a deed and transfer documents for Lot 60A, which were delivered to defendant Joseph J. Ferone ("Ferone"), attorney for Healey.  See Nsengimana Aff. ¶ 5.

The subdivision process proved "more arduous and lengthy" than defendant Healey expected.  See Affidavit of Josephine Maffei sworn to September 13, 2007 ("Maffei Aff.") ¶ 7.  Healey was unable to deliver a complete subdivision application to the Town of Greenburgh planning staff until August, 2005.  The application had to be reviewed by many Town representatives including planning, engineering, the building inspector, the police department, and the fire chief.  It also had to be resubmitted due to "steep slope" concerns.  In addition, changes to the Town of Greenburgh Code substantially increased the time required for both review and approval of the application.  Maffei Aff. ¶ 8-10.  By February 19, 2007--that is, the three years specified in the contract--Healey had yet to obtain subdivision approval.  Yet when plaintiff demanded the return of the deed and transfer, as per the above-quoted rider, defendant Ferone refused.  See Nsengimana Aff. ¶ 7.

After further demands failed, plaintiff commenced this action on August 28, 2007 seeking, through an Order to Show Cause, an order immediately compelling defendants to release the deed and transfer documents from escrow and deliver them to plaintiff.  In its Complaint, plaintiff also seeks an award of money damages for defendants' breach of contract.  On September 14, 2007, Healey brought a cross motion for rescission, asking the Court to dismiss

plaintiff's Order to Show Cause and Complaint and to rescind the aforementioned rider. Following initial argument, the Court ordered the deed and transfer documents to be delivered to the Court to be held in escrow. Having now received further oral and written submissions from the parties, the Court grants the injunctive relief sought by plaintiff and denies the cross-relief sought be defendants.

The contractual rider, on its face, mandates that defendants return the deed and transfer documents if the subdivision is not approved within three years from closing. While defendants pretend that the words "not approved" in the last sentence of the above-quoted portion of the rider are somehow ambiguous, such simple, straightforward language admits of no ambiguity and must be enforced. "It is a well-settled tenet of . . . general contract law that ambiguity should not be found where none in fact exists." Lerner v. Lerner, 120 A.D.2d 243, 246 (2d Dept. 1986).

Defendant Healey also argues that defendants are entitled to partial rescission of the rider because the parties were unaware of the actual time that it would take to obtain subdivision approval. According to Healey, the mistaken belief regarding the amount of time it would take to obtain approval is a mutual mistake of fact that justifies rescission of the Rider. However, in order for a contract to be voided on the basis of a mutual mistake of fact, the mutual mistake of fact must exist at the time of contract formation and must be substantial. Melia v. Riina, 204 A.D.2d 955, 957 (3d Dept. 1994).

Here, the amount of time it would take to obtain subdivision approval was not a fact that existed at the time of contract formation that could have been proven true or false. The possibility that the subdivision approval would take longer than three years was not a mistake of fact but a future contingency for which Healey assumed responsibility under the contract.

Finally, Healey argues that the Court should rescind the contract because failing to do so would result in plaintiff's unjust enrichment. According to Healey, it was not contemplated by the parties that the purchase price of $1.36 million paid by plaintiff would include the return of the deed to lot 60A to plaintiff because both parties believed that the subdivision plan would be approved within three years. Maffei Aff. ¶ 6, 20. However, the one case cited by Healey in this respect, Sharp v. Kosmalski, 40 N.Y.2d 119 (N.Y. 1976), does not support this position. Sharp involved a 56-year-old dairy farmer who developed a close relationship with a woman, asked her to marry him, gave her access to his bank accounts, and then transferred his dairy farm to her. She responded by ordering the plaintiff to move out of his home and vacate the farm. The New York Court of Appeals explained that, generally, a constructive trust can be imposed if property "has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." Id. at 121. "The salutary purpose of the constructive trust remedy is to prevent unjust enrichment." Id. at 123. The Court found that the facts presented a "classic example of a situation where equity should

4

intervene to scrutinize a transaction pregnant with opportunity for abuse and unfairness." Id.

Here, by contrast, where both Healey and the Republic of Rwanda were represented by counsel and there was no confidential relationship of trust involved, Healey cannot show that allowing plaintiff to retain title to Lot 60A would lead to any unjust enrichment. The rider provided that the defendant would have three years to obtain subdivision approval and, if the subdivision was not approved, the deed and transfer documents for Lot 60A would be returned to plaintiff. Even if the parties both believed that the subdivision would be approved within three years, and even if the defendant spent money in furtherance of that belief,[1] plaintiff does not hold the property "under circumstances that render unconscionable and inequitable the continued holding of the property" such that a constructive trust is essential to prevent unjust enrichment. Counihan v. Allstate Insurance Co., 194 F.3d 357, 362 (2d Cir. 1999).

Accordingly, plaintiff's request for injunctive relief is hereby granted and the Court will arrange to transfer the deed and transfer documents to plaintiff forthwith. Correspondingly, defendants' motion for rescission is denied. Finally, the parties should jointly

---

[1] The Maffei Affidavit misleadingly asserts that Healey's costs associated with the purchase, site work, construction, sale and pursuit of the subdivision application total more than $1,226,000.00. Maffei Aff. ¶ 18. However, adding up the costs listed reveals that they include all of the costs associated with purchasing and improving the land sold to plaintiff (Lot 60), for which Healey was paid $1,360,000.00 that it neglects to subtract from its costs. The amount actually spent pursuing subdivision approval for Lot 60A to date was $25,000.00. Maffei Aff. ¶ 14.

5

call the Court no later than October 4, 2007 to arrange further proceedings on the remaining issue of damages.

    SO ORDERED.

                                                                                                  JED S. RAKOFF, U.S.D.J.

Dated:    New York, New York
             October 1, 2007